## HAMILTON WOOLEN Co. *v.* MOORE and others.

*(Circuit Court, D. Connecticut.  September 25, 1885.)*

SPECIFIC PERFORMANCE—ORAL CONTRACT AS TO RIGHT TO FLOW WATER.
On examination of the facts in this case, *held*, that the bill praying for the specific performance of a parol contract in regard to the right to flow water upon certain mill privilege owned by defendants should be dismissed.

In Equity.

*Alvan P. Hyde* and *A. J. Bartholomew*, for plaintiff.

*Mahlon R. West* and *Dwight Marcy*, for defendants.

SHIPMAN, J.  This is a bill in equity praying for the specific performance of a parol contract in regard to the right to flow water upon the mill privilege now owned by the defendants.  The facts in the case are as follows:

The averments in the bill in regard to the citizenship of the parties are true.  The allegations in paragraphs Nos. 1, 2, and 3 of the bill are true, except that the conveyance to the plaintiff by Albert E. Weld, mentioned in paragraph No. 2, was made on March 30, 1868, instead of soon after January 1, 1865, as stated in said bill.

The plaintiff began to erect its reservoir dam on August 22, 1865, and in November, 1865, decided to build it three feet higher than had been contemplated.  Such a height would cause the water to flow back upon the lands of sundry owners in Connecticut, and would cause an overflow of about three feet upon the mill-wheel at the saw-mill of Albert Back, being the premises particularly described in paragraph No. 2.  Before deciding to raise said dam to said additional height, Josiah Ballard, Jr., the treasurer of the plaintiff, and thereunto authorized, had an interview with said Back for the purpose of obtaining the right to overflow his mill site.  Said Back agreed to sell to the plaintiff the right to flow his land and water-power for a fair compensation, to be determined after the water should come up to the height that the dam should raise it, and consented that the dam should be raised forthwith to the desired height.  He stated that he did not wish to put any obstacles in the way of raising the dam, because the value of his mill-power depended largely upon the plaintiff's good-will, inasmuch as it might impose restrictions in the use of the water, and advised that the work of raising the dam should be proceeded with, and that the necessary authority should be obtained from the owners who would be injuriously affected.

The plaintiff, in November, 1865, in reliance upon this undertaking of said Back, proceeded to take the necessary steps to raise the dam, by making a broader earthwork base and heavier walls, and by making the proper fills in the causeways at a large expense.  Subsequently, and in the month of November, 1865, and before the completion of the dam, said Ballard, as treasurer, and said Back made a definite parol agreement that said Back would sell the plaintiff the

right to flow said three feet for the sum of $150 per foot, measuring from the top of the plank forming the bottom of the casing of the lower wheel at said privilege, and for the conveyance to him by the plaintiff of one-half of the privilege known as the "Weld privilege." It was agreed that papers should be drawn in accordance with this agreement. Subsequently a contract was drawn, but said Back declined to sign it, because he was not satisfied with the name of a referee in regard to land damages, a matter which is not now important, because there were and are no land damages to his land.

In a day or two after, and on or about November 28, 1865, said Ballard requested said Back to sign a bond, a copy of which marked "Exhibit G"[1] is annexed hereto, and which had been prepared at said Ballard's instance. Said Back declined, ostensibly because it did not contain the actual parol agreement, the difference being that the number of feet to be flowed was not specified or limited in the bond. I think that the real reason why he made no effort to have the agreement carried into effect was because he desired to sell the entire property rather than sell the right of flowage. Said Ballard presented no other papers to said Back. Subsequently, and on or about December 20, 1865, at the request of said Ballard, said Back named $1,300 as the price for which he would sell the plaintiff his entire estate connected with said mill. Ballard declined to buy at that price.

On the evening of December 20, 1865, at the store of William M.

---

[1] EXHIBIT G.

Know all men by these presents, that I, Albert Back, of Union, in the state of Connecticut, am holden and stand firmly bound and obliged unto Joshua Ballard, Jr., treasurer of the Hamilton Woolen Company, a corporation duly established by law, at Stockbridge, in the state of Massachusetts, and his successors in that office, in the full and just sum of twelve hundred dollars, stipulated and liquidated damages, to be paid unto the said treasurer, or his successors in that office, or assigns. To the which payment, well and truly to be made, I bind myself and my heirs, executors, and administrators, firmly by these presents.

Witness my hand and seal.

Dated the twenty-eighth day of November, in the year of our Lord one thousand eight hundred and sixty-five.

The condition of this obligation is such that, whereas, the said Back has agreed to convey, by good and sufficient deed, to said corporation, or any person or corporation said treasurer or his successors in office shall request, the right to flow his water-power and privilege situated in the village of Mashapaug, in said Union, or "Mill Pond," so called, and on the northerly side of the road leading from said village to Union aforesaid, by water in the reservoir now being constructed in Holland, raised by the dam built on the "Monroe Place," upon the said treasurer, or his successors in that office, delivering to the said Back a deed of one undivided half of the Weld power and privilege, so called, upon the same pond in Mashapaug aforesaid; and, in consideration thereof, and further, the said treasurer, and his successors in that office, as a consideration for said right to flow, agree to pay to said Back at the rate of one hundred and fifty dollars per foot of fall so flowed, measuring upward from the upper side of the plank forming the bottom of the casing of the lower wheel at said privilege, as soon as the height of such flowage can be properly ascertained.

Now, therefore, if the said Back shall deliver to the said corporation, or any person or corporation the said treasurer or his successors in that office shall request, a good and sufficient deed of the right to flow his power and privilege as aforesaid, upon the said treasurer, or his successors in office, tendering or delivering to the said Back a deed of one undivided half of the Weld privilege as aforesaid, then this obligation shall be null and void, and otherwise it shall remain in full force and virtue.

Signed, sealed, and delivered in presence of            ———— [Seal.]

Corbin, said Back told said Corbin, Reed Tourtelotte, and Lyman Moore, son of Thomas Moore, that Mr. Ballard, in behalf of the plaintiff, had asked him his price for the saw-mill property, and that he had named $1,300.

On the next day said Corbin, said Tourtelotte, and said Thomas Moore bought said property of said Back for $1,300, which was its fair value; said Corbin and said Tourtelotte each owning an undivided fourth, and said Moore owning an undivided half thereof. Said Moore took one-half of his interest for the benefit of said Lyman Moore. Said purchasers did not know that said Back had made the agreement that the plaintiff might raise its dam, and he would sell the right of flowage for a fair compensation, and that in reliance thereon the plaintiff had commenced its work. All knew that the dam was being raised. Said Thomas Moore knew that the plaintiff had been negotiating with said Back for the purchase of some right in said property, and that said Back had refused to sign the papers which professed to state the result of the negotiation. All knew of the proposition of Ballard to purchase said Back's property, and all believed that the proposition was made for the purpose of obtaining the right to flow the Mashapaug mills by the Holland dam, and that if the property was purchased by the plaintiff it would be in danger of being disused as a saw-mill, whereas its continuance as such they thought was important to the village of Mashapaug, and to the woodland in which said Corbin and said Moore were interested. The dam was completed December 22, 1865.

After said purchase said Corbin and said Thomas Moore both truly informed said Ballard that the object of their purchase was not to interfere with the plaintiff's plans in regard to the dam, but to secure the benefits of the said mill to the village and to the land-owners, because they feared that if the plaintiff bought it, it would be discontinued. It was agreed by said purchasers and said Ballard, in January, 1866, and before there was any flowage upon said wheel, that the water should be put upon the wheels of said mill, and when the owners ascertained what the effect was, they would accept a fair compensation for the permanent damage. The water was set back upon the wheels in process of time. Negotiations commenced between said Corbin and said Ballard, but no agreement was reached. It sufficiently appears from the acts and conduct of the defendants that this license to flow was continued until December 1, 1880, when it was revoked by written notice of revocation, which was given to the plaintiff. Reed Tourtelotte sold his interest in said premises to Lyman Moore by deed dated June 17, 1872.

By complaint dated March 26, 1881, the defendants brought a suit against the plaintiff before the superior court for the county of Tolland, claiming $400 damages for trespass by flowage against the wheels of said mill. Said complaint also prays for an injunction against the flowing of water upon said wheel by the plaintiff.

The raising of said dam said additional three feet, and the land damages connected therewith, cost the plaintiff at least the sum of $10,000. Since December 22, 1865, the value of said mill has been diminishing. Six hundred dollars would have been a large compensation for the permanent right to flow back upon said wheel to the height of three feet in December, 1865. Mr. Ballard offered the defendants that sum at one time after their purchase.

The findings of fact in regard to the knowledge by the grantees of Albert Back of his agreement with the plaintiff make it impossible to order a decree for the conveyance of the easement to the plaintiff.

The position of the case is that the grantees, in the belief that the plaintiff desired to buy the mill site for the purpose of having the right to flow a part of it, bought the premises to prevent the destruction or disuse of the property as a saw-mill, and immediately permitted the plaintiff to flow, for the purpose of ascertaining what the damage would be, with the promise to sell the right for its value, and continued the license without any serious objection for nearly 15 years, but never came to an agreement with the plaintiff. Until December 1, 1880, the plaintiff was a licensee.

The bill will be dismissed, with so much of the taxable costs as consists of cash disbursements for printers' and examiners' fees.